Argued and submitted May 31, 1985, reversed; referee's amended order reinstated January 29, 1986

In the Matter of the Compensation of
Ollie A. Rater, Claimant.

RATER,
*Petitioner,*

*v.*

PACIFIC MOTOR TRUCKING COMPANY,
*Respondent.*

(82-09665; CA A33477)

713 P2d 651

J. Michael Alexander, Salem, argued the cause for petitioner. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann, Salem.

Lindsey H. Hughes, Portland, argued the cause for respondent. With him on the brief were Frank M. Parisi and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Claimant seeks judicial review of a decision of the Workers' Compensation Board which reversed the portion of the referee's order setting aside employer's denial of his aggravation claim. We reverse the Board and reinstate the referee's amended order.

Claimant worked for employer as a truck driver for 16 years, ending in February, 1982. During that time he suffered compensable back injuries on January 23, 1978, and September 27, 1979. He was found medically stationary as of September 24, 1980. On July 7, 1982, he was awarded 15 percent unscheduled disability for loss of earning capacity attributable to the first injury, ORS 656.214(5), and temporary total disability benefits for the second injury. ORS 656.210. In addition, employer paid claimant's medical expenses throughout the proceedings below, as required by ORS 656.245. The only question here is whether claimant is entitled to have his claim reopened under ORS 656.273 for reassessment of his loss of earning capacity and for additional TTD compensation.

Dr. Murphy began treating claimant in March, 1982, and diagnosed his condition as chronic low back strain and degenerative disc disease with facet hypertrophy. He indicated that claimant could work but could only drive short distances and could lift no more than 25 pounds. In July, 1982, claimant started work as a truck driver for another employer (Meyer Brothers), apparently without informing that company of his lifting restriction.[1]

Claimant worked for Meyer Brothers through September, 1982, but began experiencing additional pain on September 17. After an examination on September 27, Murphy noted the development of additional pain but concluded that claimant's condition remained essentially the same. On September 29, 1982, Murphy reported to employer that he had released claimant to return to work with a lifting restriction of 30 pounds, and claimant called Meyer Brothers to inform the

---

[1] Neither party suggests that Meyer Brothers bears any responsibility for claimant's condition.

company of that restriction. Meyer Brothers then laid claimant off, because it believed that he could not perform the job without lifting more than 30 pounds.

Employer responded to Murphy's letter as if it were an aggravation claim[2] and issued a denial letter dated October 12, 1982. The letter stated that Murphy had failed to relate claimant's condition to the job claimant performed for employer. At a hearing on March 29, 1983, the parties agreed to keep the record open for supplemental evidence from Murphy. Claimant then submitted an April 8, 1983, letter from Murphy, which stated:[3]

"I saw this individual again on [November] 29, 1982, and at that time, he was having increasing symptoms in his low back. He had increased pain in his low back on straight leg raising tests. My recommendation at that time was that he not return to work and that he limit his activities and utilize local measures, such as heat to his low back."

Employer subsequently deposed Murphy and focused its questions to determine as precisely as possible when claimant's condition had worsened. Murphy identified some worsening of symptoms between September 27 and November 29, but made clear that the change in his opinion concerning claimant's ability to work had very little to do with that worsening:

"Well, it was my opinion after seeing him [on November 29] that my recommendations for his restrictions in terms of what he could comfortably do, that is, I think no interstate trucking, no lifting greater than twenty-five pounds, was just not working.

"This was an opinion which I arrived at over a period of several months of seeing him and * * * it was at that point that I * * * felt that it probably wasn't reasonable for him to pursue that line of work anymore because * * * over a period of seven or eight months he was having one symptom after another, and I just didn't think it was going to be a viable working situation for him in the long run.

---

[2] ORS 656.273(3) provides:

"A physician's report indicating a need for further medical services or additional compensation is a claim for aggravation."

[3] The letter actually states that Murphy saw claimant the second time on *September* 29, 1982. The parties agree that he meant November.

"* * * * *

"I don't think you can say there's any specific date. I think there's just a cumulation of episodes, of problems this fellow had, not only with any attempt at going back to trucking, but attempts at * * * everyday activities * * * that in my mind just indicated that he was not going to be successful as a truck driver even with these restrictions, and the fact that this letter was dated whenever it was * * * doesn't mean that's the date I said, 'You can't go back to work.' I mean, no acute event occurred. It was just an impression I arrived at over a period of time."

The referee set aside employer's denial of the aggravation claim, stating:

"On [November 29, 1982,] Dr. Murphy found increased symptomatology and increased low back tenderness. There was no clinical evidence of increased neurological function, but Dr. Murphy concluded that the claimant's condition had deteriorated to the extent that truck driving, even with the imposed limitations was no longer a reasonable occupational pursuit for claimant."

Employer moved for clarification of the referee's order on the ground that the opinion failed to make its findings clear on the question of when claimant's aggravation had taken place. Employer correctly noted that, "[i]n his deposition testimony, Dr. Murphy confirmed that claimant's condition on September 27, 1982, was the same as it had been in March, April and August." The referee then amended the order to read:

"IT IS THEREFORE ORDERED that the denial of the claim of aggravation by the employer is reversed and disapproved and the employer is ordered to accept said claim and to pay to claimant, *effective as of November 29, 1982* and until the claim is again determined, all benefits provided by law." (Emphasis supplied.)

The Board reversed, stating:

"The Referee found that claimant had established an aggravation beginning November 29, 1982, even though the Referee noted that claimant had not previously presented such a claim to the employer and thus that the employer had never denied such a claim. If we affirmed the Referee's order, we would be taking the illogical action of setting aside an October 1982 denial of a November 1982 aggravation claim."

That reasoning would be correct *if* claimant had

actually made two separate aggravation claims. We hold that he did not, because Murphy's description of the November 29 examination was relevant to the question placed in issue by claimant's hearing request. That question was not simply whether employer had reasonably denied the claim on October 12, 1982, given the evidence available at that time. The question was, instead, whether "the evidence as a whole shows a worsening of the claimant's condition * * *." ORS 656.273(7). Evidence that was unavailable at the time of the denial may properly be considered under that standard.

In *Vandehey v. Pumilite Glass & Building Co.,* 35 Or App 187, 580 P2d 1068 (1978), we considered an analogous problem raised by a *claimant* who found it advantageous to treat a doctor's report, relevant to a pending claim, as a new and separate claim. The problem there was different, but the reasoning upon which we rejected the claimant's attempt to fragment the hearing process applies equally well here:

> "Claimant's September 29, 1976, request for a hearing specifically placed in issue the need for further medical evaluation of claimant on a claim he had already made. Dr. Hickman's letter of January 4, 1977, supported that prior claim and was appropriate evidence to be received at the subsequent hearing. It was proffered evidence of a *pending* claim, not assertion of a *new* one. Any other rule would encourage similarly situated claimants to "keep an anchor to windward" by labeling all new medical evidence as either a new claim or an aggravation claim, instead of concentrating on the hearing process they have already invoked. This approach would seriously undermine the hearing process. We decline to adopt it." 35 Or App 192. (Emphasis in original.)

Here, as in *Vandehey,* it would seriously undermine the hearing process to treat Murphy's report of the November 29 examination as a separate aggravation claim. It would create situations in which multiple hearings concerning a single claimant could proceed simultaneously, each concerned with essentially the same issue. That would not contribute to the efficient operation of the workers' compensation system. It would also not contribute to the fairness of worker's compensation hearings when, as here, neither party is prejudiced by allowing the claimant to base some or all of his claim on evidence regarding his condition that developed after his request for a hearing.

Employer argues that *Syphers v. K-W Logging, Inc.,* 51 Or App 769, 627 P2d 24, *rev den* 291 Or 151 (1981), deprives the referee of jurisdiction to rule on the "November claim," because it had been neither accepted nor denied. That argument assumes that there was a November claim. There was not. Murphy's letter of April 8, 1983, was not intended as an assertion of a new claim but as evidence in the pending hearing on the denied claim. *See Vandehey v. Pumilite Glass & Building Co., supra.*

Reversed; referee's amended order reinstated.